# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                                              No. 3:09-cr-13-BJB

PAUL LAWRENCE WILLIS, JR.

\* \* \* \* \*

## OPINION & ORDER DENYING SENTENCE REDUCTION

      Serial bank robber Paul Lawrence Willis, Jr. seeks a sentence reduction based on recent amendments to the United States Sentencing Guidelines. While Willis is eligible for a sentence reduction under the policies recently promulgated by the Sentencing Commission, he is not entitled to one. Even under the amended Guidelines, a reduction is not warranted if it would be inconsistent with the sentencing factors Congress has directed courts to consider. As the Government explains in opposition, the same reasons that justified a lengthy sentence when Judge Russell originally sentenced Willis continue to support incarceration rather than release. So the Court declines to reduce his sentence and denies the Defendant's request for a sentence reduction.

## I.

      Willis walked into the Telco Federal Credit Union on a December day in 2008, pointed a gun at the tellers, and demanded cash from the drawers. Presentence Investigation Report (DN 37) ¶ 8. When one teller didn't respond as quicky as Willis wanted, he struck her with the gun. *Id.* He then stole nearly $60,000, led police on a 40-minute chase across Louisville, crashed into multiple vehicles, and drove the wrong way down a one-way street before his eventual arrest. ¶ 9.

      But that was only one of Willis' robberies. After his arrest, the Louisville Police Department connected him to four other armed bank robberies between 2006 and 2008. ¶¶ 10–14. A grand jury indicted him for all five. Willis pled guilty under a Rule 11(c)(1)(C) agreement to five counts of armed bank robbery and one count of using a firearm during a crime of violence (the Telco robbery). Plea Agreement (DN 29) ¶ 3. That agreement provided for a sentence of 240 months' imprisonment, ¶ 10, which Judge Russell imposed on February 16, 2010, Judgment (DN 36) at 1. This means the sentencing judge varied *upwards* from Willis' advisory guidelines range of 121–151 concurrent months for the bank-robbery counts and 84 additional ("consecutive") months for using a firearm during a crime of violence. PSR ¶ 103. Though Willis surrendered his right to appeal or collaterally attack his sentence (with limited exceptions apparently not relevant here) as part of his plea agreement, *see*

¶ 12[1], he is back before this Court due to recent amendments to the Sentencing Guidelines.

## II.

The U.S. Sentencing Commission issued Amendment 821 to the Sentencing Guidelines in November 2023. *See United States v. Peterkine*, No. 23-14089, 2024 WL 2289923, at *2 (11th Cir. May 21, 2024). The pertinent portion of the Amendment reduced the contribution of "status points" based on probation, supervision, or parole on a defendant's criminal-history calculation. Previously, under U.S.S.G. § 4A1.1, defendants received "two additional criminal history points when the offense of conviction was committed by the defendant while under any criminal justice sentence." *United States v. Claybron*, 88 F.4th 1226, 1228 (7th Cir. 2023). Amendment 821, however, specifies that defendants with less extensive criminal history (6 points or fewer) receive zero additional status points if they committed the crimes at issue while they remained subject to a criminal sentence based on past offenses. *See* U.S.S.G. § 4A1.1(e). Defendants with more extensive criminal history (7 or more points) still receive some additional detriment from "commit[ing] the instant offense while under any criminal justice sentence," but the consequence is now less severe than before the 2023 amendment: they receive one status point rather than two as part of their criminal-history calculation. *Id.*

This much the Sentencing Commission accomplished through Amendment 821. Then, in Amendment 825, the Commission decided to give Amendment 821 retroactive effect. Its stated reasoning for retroactivity was rather scarce: "accounting for status on a more limited basis continues to serve the broader purposes of sentencing while also addressing other concerns raised regarding the impact of status points." U.S.S.G. Amendment 825. As for Amendment 825's effect on finality, victims, sentencing disparities, docket pressure, and other considerations typically associated with retroactivity decisions, the Commission offered no reasoning at all:

> The Commission concludes that consideration of these factors [that is, its reasons for adopting Amendment 821] supports a policy determination that a reduced guideline range is sufficient to achieve the purposes of sentencing and that, in the sound discretion of the court, a reduction in the term of imprisonment may be appropriate for previously sentenced, qualified defendants.

*Id.* (Commission commentary).

The Commission's analysis, such as it is, hardly grapples with the serious costs and benefits of widescale retroactive sentencing "modifications" across the federal judiciary and prison population. And not for the first time. Reluctance to reason

---

[1] Paragraph 12 provides that "[t]he Defendant knowingly and voluntarily waives the right … to contest or collaterally attack his conviction and resulting sentence pursuant to 28 U.S.C. § 2255 or otherwise." The United States does not discuss this provision in its Response.

about retroactivity is a topic that's drawn the attention of thoughtful commentators. The factors that purport to guide the Commission's decisionmaking, one expert has noted, "are particularly unhelpful in creating any cognizable and applicable standard for retroactivity, at least without further explanation by the Commission about how and why it applies those factors and how and why they interact with one another and with the principle of finality." Jonathan Wroblewski, *Is it Time for the U.S. Sentencing Commission to Issue a Detailed, Written, and Reasoned Opinion on When it Applies Guideline Amendments Retroactively?*, available at https://sentencing.substack.com/p/is-it-time-for-the-us-sentencing (July 17, 2024); *see also* Douglas A. Berman, *Re-Balancing Fitness, Fairness, and Finality for Sentences* 4 WAKE F. J.L. POL'Y 151, 166–71 (2014) (distinguishing retroactivity of sentences and convictions). Would the Commission's analysis survive appellate review if articulated by a trial judge? Even granting substantial deference to mixed questions of fact, law, and policy in the sentencing context? *See Gall v. United States*, 552 U.S. 38 (2007). The answer isn't clear. But the need for principled reasoning is. A single Commission policy decision can determine whether and how district judges conduct thousands of sentencing-modification proceedings. Surely the Commission's major premise deserves consideration commensurate with its application in the trial courts.

   Modifying a final sentence in response to a Commission amendment, after all, involves not only math but also judgment. Revisiting an otherwise final sentence like Willis' is possible only because Congress, in 18 U.S.C. § 3582(c)(2), authorized judges to "reduce the term of imprisonment" of a defendant "who has been sentenced … based on a sentencing range that has subsequently been lowered by the Sentencing Commission." A district judge must still determine that a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission" (which list the amendments that may trigger § 3582(c)(2) as well as limitations on that relief). And the law further demands that the judge determine whether a reduction is consistent with "the [sentencing] factors set forth in section 3553(a) to the extent that they are applicable."[2]

---

[2] These factors are:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
 (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines …
(5) any pertinent policy statement …

3

This step requires the reasoned judgment expected of a trial judge at sentencing. The § 3553(a) factors are the same ones considered alongside the (advisory) Guidelines range by the parties, the U.S. Probation Office, and the sentencing judge at the time of the defendant's original sentence. During the initial sentencing hearing, however, the judge benefits from much more—and more current—information relevant to the sentencing determination: the presentence investigative report, sentencing memos from the prosecution and defense, in-court arguments of counsel, the defendant's allocution, recent experience with the defendant and counsel during a plea hearing or trial, and often informative statements or testimony from victims and family members of the defendant. True, according to the Supreme Court, judges "enjoy discretion in the sort of information they may consider" during an initial sentencing hearing and on sentencing "modification" alike. *See Concepcion v. United States*, 597 U.S. 481, 491–92 (2022) (cleaned up). But in reality the judge arrives less well-armed in many respects at the subsequent modification stage—particularly if (as here) a different judge conducted the initial sentencing hearing. *See id.* at 488–89 (discussing materials available to sentencing court on Defendant's *pro se* motion for a new sentence); *id.* at 503–04 (Kavanaugh, J., dissenting) (discussing "fundamental differences between sentencing and sentence-modification proceedings" (quoting *Dillon v. United States*, 560 U.S. 817, 830 (2010)). All the more so if a previously represented defendant requests a modified sentence *pro se* and based on unsworn assertions not subjected to any in-court scrutiny. However laudable the substantive aims and (at least sometimes) effects of modifying a sentence imposed years ago, *see* Berman, 4 WAKE FOREST J.L. & POL'Y at 174–75, the procedural costs and error risks of doing so en masse, with limited guidance regarding the bounds of retroactive sentencing discretion, are enough to give a careful judge pause. Perhaps that's one reason why the "broad discretion" sometimes afforded the judges modifying previously imposed sentences, according to the Supreme Court, "counsels in favor of deferential appellate review" and doesn't "require a court to reduce any sentence." *Id.* at 501 (majority op.).

### III.

Willis is one of many offenders seeking relief from sentences imposed for offenses committed while on probation, supervised release, or parole. In response to those requests, the Chief Judge of this Court issued General Order No. 23-14 to establish procedures for considering them. Under that order, the Probation Office determined that Willis was eligible for a sentence reduction based on the retroactive effect of Amendment 821. Memorandum of Recalculation (DN 50) at 1–2. In line with the Probation Office's recalculation of his guideline range under Amendments 821 and 825, Willis asks for a 15-month sentence reduction; this would reduce his original sentence of 240 months' incarceration to 225 months. Defendant's Response

---

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

4

(DN 52) at 2. The Government opposes his request, stressing that Willis was sentenced under a binding Rule 11(c)(1)(C) plea agreement for a series of aggressive and dangerous crimes whose circumstances tilt heavily against any belated leniency. Government Response (DN 53) at 8–9.

To grant Willis' motion and reduce his sentence, the Court must hold that (1) Willis' sentence was "based on" the criminal-history guidelines that Amendment 821 changed, (2) reducing his sentence is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the § 3553(a) factors support a sentence reduction. *See* § 3582(c)(2). The first two steps are undisputed, but the third clearly demonstrates why early release is inappropriate here.

**A. Willis is eligible for a sentence reduction.** The Probation Office, Willis, and the Government all agree that the Court may reduce Willis' sentence. *See, e.g.*, Government's Response at 4–6 ("[T]he government agrees … that the defendant is potentially eligible for a sentence reduction").

Willis was subject to a criminal-justice sentence when he committed at least some of the bank robberies. In 2005, the Jefferson District Court convicted him for carrying a concealed deadly weapon. PSR ¶ 80. He was sentenced to 92 days' imprisonment, with 90 days conditionally discharged for two years. *Id.* He remained subject to this sentence when he robbed Fifth Third Bank in 2006. This much is apparent from the presentence report prepared by the Probation Office before his sentencing. So his criminal history increased to category III and his advisory guidelines range increased to 121 –151 months' imprisonment, in addition to the 84-month sentence to be served consecutively for the use-of-a-firearm conviction. ¶¶ 84, 103. That indisputably was "based on" Willis' commission of these robberies while subject to the sentence stemming from his 2005 Jefferson County conviction.

"A district court imposes a sentence that is 'based on' a Guidelines range if the range was a basis for the court's exercise of discretion in imposing a sentence. *Hughes v. United States*, 584 U.S. 675, 686. (2018). That remains true even when, as here, the Court sentences the defendant under a Rule 11(c)(1)(C) plea agreement that imposes a specific sentence: "A sentence imposed pursuant to a Type–C agreement is no exception to the general rule that a defendant's Guidelines range is both the starting point and a basis for his ultimate sentence." *Id.*

Willis' plea agreement reflects the parties' consideration of his criminal history score and Guidelines range: the "parties have independently reviewed the Sentencing Guidelines applicable in this case." Plea Agreement ¶ 11. And the parties "reserve[d] the right to object to the USSG §4A1.1 calculation of defendant's criminal history." *Id.* Nothing in the Agreement indicates that this is anything other than a "usual case," *Hughes*, 584 U.S. at 687, in which a Rule 11(c)(1)(C) agreement is "based on" the guidelines.

**B. Willis' request for a reduction is consistent with the Sentencing Commission's policy statement.** "Section 3582(c)(2) … authorizes a reduction … only 'if such a reduction is consistent with applicable policy statements issued by the

5

Sentencing Commission'—namely, § 1B1.10." *Dillon*, 560 U.S. at 826. That policy statement authorizes a reduction if "the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in [this section]" and the amendment actually "ha[s] the effect of lowering the defendant's applicable guideline range." §1B1.10(a).[3]

Section 1B1.10 identifies Amendment 821 as one of the "Amendments covered by this policy statement." §1B1.10(d). And Amendment 821 does in fact lower Willis' guidelines range. According to the calculation of the U.S. Probation Office, Willis originally received two "status points," for a total of 5 criminal history points, which led to a criminal history category of III and a guideline range of 121 to 151 months' imprisonment. (Sealed) Memorandum of Recalculation (DN 50) at 2. Under Amendment 821, he receives no "status points." That's because he had only 3 criminal history points before he was convicted of these 5 robberies. Based on those 3 points, his recalculated criminal history is category II, giving him a recalculated guidelines range of 108 to 135 months' imprisonment. *Id.*

**C. The § 3553(a) sentencing factors demonstrate why a reduced sentence is unwarranted.** Because Willis is eligible for a sentence reduction based on the first two steps of the analysis, the Court must "consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Dillon*, 560 U.S. at 826.

Those § 3553(a) factors all cut against a sentence reduction.

First, Willis' offenses were quite serious. Willis robbed the Kentucky Telco Federal Credit Union with a semiautomatic pistol. He used the gun to strike one of the tellers. Presentence Investigation Report ¶¶ 8–9. He took nearly $60,000 in cash. He drove away at high speed and evaded police for 40 minutes in a dense urban area—at times racing the wrong way on a one-way street. ¶ 9. His car struck three other vehicles. Willis' actions severely traumatized bank employees, many of whom needed therapy to cope with the trauma his robberies caused. ¶ 16.

His four other robberies (between 2006 and 2008) appear similarly serious. In each, he entered the bank carrying a gun, pointed it at the tellers and customers, and stole thousands of dollars before fleeing. ¶¶ 11–14. Willis committed these offenses while on probation for a state conviction for carrying a concealed deadly weapon. ¶¶ 80, 84. This extremely serious conduct deserved (and received) a lengthy prison sentence. Despite the Sentencing Commission's reassessment of its prior decision to treat offenses on the heels of a prior sentence more harshly, the "nature and circumstances of the offense[s]," § 3553(a)(1), cut against any reduction of his agreed-upon sentence.

---

[3] Section 1B1.10(b)(2) also provides that "the court shall not reduce the defendant's term of imprisonment … to a term that is less than the minimum of the amended guideline range" and that "[i]n no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." Neither limitation is relevant here.

6

Willis' sentence reflected an agreement that he wouldn't be punished for four other serious offenses the grand jury had charged. The Government agreed to dismiss four counts of brandishing a firearm during a crime of violence. Plea Agreement ¶ 10 (citing § 924(c)). According to the United States, these charges would've (at the time) subjected Willis to an additional mandatory 100-years imprisonment consecutive to any other sentence. Government Response at 2 & n.1. Willis thus received a much lighter sentence than he might have without the binding agreement he entered into. Reducing that sentence further would not adequately "reflect the seriousness" of his crimes or "provide just punishment for the offense." § 3553(a)(2)(A).

For much the same reasons, a sentence reduction would not "afford adequate deterrence to criminal conduct," § 3553(a)(2)(B), "promote respect for the law," § 3553(a)(2)(A), or adequately "protect the public from further crimes," § 3553(a)(2)(C). The fact that Willis committed these bank robberies while on probation for a state-level concealed-weapons charge, PSR ¶¶ 80, 84, demonstrates that he has little respect for the law. Notwithstanding the revised view of post-incarceration recidivism as a whole espoused in the Sentencing Commission's amendments, these offenses surely represent an instance in which a particular offender's response (a bank-robbing spree) to his prior conviction and (largely suspended) sentence increases his culpability and prospective danger. Willis wasn't rearrested because he made a poor-but-understandable decision to keep a gun in a dangerous neighborhood; he was rearrested for repeatedly choosing to visit gun-related violence and theft on others. He surely knew how important it was for him to avoid weapons and further criminal activity while on probation. A lengthy sentence of the sort he agreed to was and is necessary to deter him and others from committing further crimes and protect the public.

Reducing Willis' sentence would not "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). But it could create them. Amendment 821 is seemingly premised on the view that harsher punishment for defendants who commit a crime while serving a criminal justice sentence is a valid penological goal. *See* Introductory Commentary to U.S.S.G. § 4A ("A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment."). That is perfectly logical; indeed, it stands as one of the oldest principles of criminal law. *E.g.,* Julian V. Roberts, *The Role of Criminal Record in the Sentencing Process*, 22 CRIME & JUST. 303, 308 (1997) ("Statutory sentencing enhancements for recidivist offenders go back millennia."). But the Amendment—and its retroactive application—implements this principle in a curious way. Instead of punishing all defendants who commit a crime while serving another criminal sentence more harshly (as the pre-Amendment guidelines did), Amendment 821 imposes a (somewhat) harsher sentence on only those defendants with seven or more criminal history points. § 4A1.1(e).

Perhaps the Sentencing Commission decided that only the most serious criminal defendants should be punished for committing a crime while serving another

7

sentence. But tying status points to criminal history points is at best a blunt instrument for implementing this view. After all, the Guidelines themselves recognize that criminal-history points can over- or under-represent the seriousness of a defendant's actual criminal history. *See* § 4A1.3 (departures based on inadequacy of criminal history category). Sentencing judges of course regularly address arguments to this effect. And more to the point, the partial linkage of criminal history and status points is seemingly at odds with the introductory commentary, which suggests that *all* defendants who commit a crime while serving another sentence are more culpable. *See* § 4A. And the number and manner of Willis' convictions—past and current—considered by Judge Russell at sentencing make his a special case of recidivism. So a sentence reduction based on Amendment 821 could therefore create the very sentencing disparities that Congress directed judges to prevent.

Because a sentence reduction is inconsistent with the sentencing factors Congress has directed judges to consider, the Court declines to reduce Willis' sentence under Amendment 821. *See* § 3582(c)(2).

## IV.

"Without finality, the criminal law is deprived of much of its deterrent effect." *Teague v. Lane*, 489 U.S. 288, 309 (1989). Perhaps those costs are already baked into Amendments 821 and 825. But the erosion of finality is hardly the only problem with reopening legally imposed convictions and sentences years later. "While men languish in jail, not uncommonly for over a year, awaiting a first trial on their guilt or innocence, it is not easy to justify expending substantial quantities of the time and energies of judges, prosecutors, and defense lawyers litigating the validity under present law of criminal [sentences] that were perfectly free from error when made final." *Williams v. United States*, 401 U.S. 667, 691 (1971) (Harlan, J., concurring in the judgment). "No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved." *Id.* That statement rings particularly true here, as no one has identified any constitutional or legal infirmities with Willis' conviction or sentence.

Yet the law requires this Court to apply Amendment 821 retroactively. *Cf. Dillon*, 560 U.S. at 819 (§ 1B1.10 is binding in sentence-modification proceedings under § 3582(c)(2)); *United States v. Fowler*, 819 F.3d 298, 304–05 (6th Cir. 2016) (failure to consider Guidelines is procedural error). And it must treat any nonfrivolous arguments with respectful consideration. *See Concepcion*, 597 U.S. at 501 (citing *Golan v. Saada*, 596 U.S. 666, 679 (2022)). Given those arguments and those discussed above and in Judge Russell's original judgment, Willis is eligible for a sentence reduction, but not *entitled* to one. Under § 3582(c)(2), the Court should reduce Willis' sentence only if doing so is consistent with the sentencing factors Congress has directed judges to consider. It is not, so the Court denies Willis' motion.

January 23, 2025

Benjamin Beaton, District Judge
United States District Court